UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

DOUGLAS PIERSON,            )
                            )
    Plaintiff,              )
                            )
v.                          )   Civil Action No. _____
                            )
UNITED STATES OF AMERICA,   )
                            )
    Defendant.              )

## COMPLAINT

Douglas Pierson ("Mr. Pierson"), by counsel, states as follows for his Complaint against Defendant United States of America:

### Jurisdiction and Venue

1. This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. This Court is vested with jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1346(b).

2. In compliance with 28 U.S.C. § 2675, Mr. Pierson filed a notice of administrative claim with the Department of Veterans Affairs, attached hereto as Exhibit A. That claim was received by the Department of Veteran Affairs on December 12, 2016.

3. To date, no determination has been made as to Mr. Pierson's claim. Accordingly, Mr. Pierson's claim is ripe to be litigated in this Court pursuant to 28 U.S.C. § 2675(a).

4. Plaintiff hereby certifies that he is fully compliant with Pa. R. Civ. P. 1042.3. Plaintiff's certificate of merit is attached hereto as Exhibit B.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because the cause of action arose within the Eastern District of Pennsylvania at the Philadelphia VA Medical Center ("Philadelphia VAMC") in Philadelphia, Pennsylvania.

6. At all times relevant to this action, the United States owned and operated the Philadelphia VAMC and its affiliated outpatient care centers.

7. At all times relevant to this action, the agents, servants, employees, and personnel of the United States were acting within the course and scope of their employment in providing and/or failing to provide medical care and treatment to Mr. Pierson.

8. At the time of the medical care at issue, Plaintiff resided at 2509 Bryan Drive, Wilmington, Delaware 19808. Plaintiff now resides at 2302 Milltown Road, Wilmington, Delaware 19808.

9. Mr. Pierson is a veteran of the United States Army, and thus he was entitled to care and treatment at the Philadelphia VAMC and its affiliated outpatient care centers.

10. The medical care described as follows was provided to Mr. Pierson at the Philadelphia VAMC and/or its affiliated clinics unless otherwise stated.

## Allegations

11. Plaintiff restates and re-alleges paragraphs 1 through 10 as if fully stated herein.

12. Douglas Pierson is a 72-year-old Army veteran who had both of his legs amputated below the knee as a result of the failure of his medical providers at the Philadelphia VAMC to timely diagnose and treat a urinary tract infection. These failures ultimately resulted in the development of complications leading to tissue necrosis and dry gangrene, requiring the amputations.

13. In late March 2016, Mr. Pierson began to develop right thigh pain. Over the course of a few days, the pain spread to his groin area.

14. On March 27, 2016, Mr. Pierson presented to the Philadelphia VAMC Emergency Department as a result of the worsening pain.

15. He underwent a CT scan, which revealed the presence of a right ureteral stone (a kidney stone that has migrated into the ureter) with "mild hydroureter" (fluid in kidney) and a bladder diverticulum with urine residual.

16. A Foley catheter was inserted and the Philadelphia VAMC medical staff determined that urological intervention was not required at that time.

17. Over the following weeks, the medical staff at the Philadelphia VAMC, including urologists Keith Van Arsdalen, MD and Alexander Skokan,

MD, failed to adequately follow and monitor the ureteral stone that had been diagnosed.

18. Indeed, despite being seen in the Philadelphia VAMC Emergency Department and outpatient clinics on multiple occasions for issues relating to his Foley catheter, urinary tract infection, urinary retention, and bloody urine, nothing was done to determine whether the stone had passed, or at least was not causing further complications. No imaging studies were performed and Mr. Pierson was not seen by Urology for follow-up.

19. On April 19, 2016, Mr. Pierson presented to the Philadelphia VAMC Emergency Department again and was diagnosed with a urinary tract infection.

20. It is important to note that during this admission, the Philadelphia VAMC medical staff treated this urinary tract infection with a single intravenous dose of antibiotics.

21. The Emergency Department providers sought to consult with the Urology Clinic doctors, but as was noted in the chart, "A phone consult was placed with Urology . . . urology never called back . . . ." Mr. Pierson also was given an oral antibiotic prescription upon discharge.

22. On May 4, 2016, Mr. Pierson visited the Urology Clinic at the Philadelphia VAMC, where the Foley catheter was removed. However, there was no assessment performed to confirm that Mr. Pierson was adequately emptying his

bladder and the Foley catheter had to be reinserted the following day because of urinary retention.

23. On May 5, 2016, shortly after midnight, Mr. Pierson presented to the Philadelphia VAMC Emergency Department for difficulty voiding. Mr. Pierson was diagnosed with another urinary tract infection, but this time was prescribed only an oral antibiotic.

24. Indeed, during this visit, Mr. Pierson was provided with no intravenous antibiotics whatsoever by his medical providers at the Philadelphia VAMC, including the attending physician, Michele DiNicola, MD.

25. To further complicate matters, despite being prescribed an oral antibiotic, the Philadelphia VAMC medical staff discharged Mr. Pierson that day without ensuring that he had received that prescription medication.

26. Consequently, Mr. Pierson left the hospital shortly before 5:00 a.m. without any antibiotics for the painful and worsening urinary tract infection.

27. On May 6, 2016, at approximately 3:00 p.m., Mr. Pierson presented to the Urology Clinic at the Philadelphia VAMC, complaining of issues with his Foley catheter. He was treated by Dr. Skokan and Nancy Harkins, RN.

28. At this visit, Mr. Pierson was noted to have a fever of 101.2 degrees. The fact that Mr. Pierson was found to have a fever during this visit is significant.

29. Indeed, urinary tract infections involving the bladder typically do not result in the development of a fever. Instead, a fever indicates a more serious infectious complication, usually involving the upper tracts of the renal system.

30. In the presence of a known stone and potential ureteral obstruction, this is a serious and life threatening medical condition. It requires immediate treatment, including intravenous antibiotics.

31. Strangely, other than Mr. Pierson's temperature, no other vital signs were documented during this visit.

32. It also is important to note that although Mr. Pierson had developed a fever, he did not present with symptoms of rigors (shivers in the presence of a fever) or of septic shock at that time.

33. Also of significance from this May 6 visit is the fact that no imaging was ordered by Mr. Pierson's medical providers despite the fact that Mr. Pierson had a known history of kidney and ureteral stones.

34. The presence of a urinary tract infection and fever in a patient with kidney and/or ureteral stones mandates that imaging be performed to determine whether the stone has caused a worsening obstruction and to assess whether surgery is required.

35. Indeed, the constellation of signs and symptoms Mr. Pierson exhibited at the time of his presentation to the Philadelphia VAMC on May 6 indicated a

medical emergency; however, no such emergent medical care was provided to Mr. Pierson.

36. Instead, the medical staff at the Philadelphia VAMC simply diagnosed Mr. Pierson with another urinary tract infection and sent him home without any further urological workup or treatment. Again, like the May 5 visit, the Philadelphia VAMC medical staff failed to provide Mr. Pierson with intravenous antibiotics.

37. As noted, an untreated urinary tract infection in the presence of known kidney or ureteral stones is especially dangerous. The stone has the possibility of obstructing the ureter, allowing the infection to become concentrated behind the obstruction, which then spreads to the bloodstream, resulting in a systemic infection. This is what happened to Mr. Pierson.

38. In the hours after being discharged from the Philadelphia VAMC, still without appropriate intravenous antibiotic treatment, Mr. Pierson developed rigors and was transported by ambulance that night to Delaware County Memorial Hospital shortly after 9:00 p.m.

39. He was minimally responsive and his temperature was noted to be a dangerous 106 degrees. Mr. Pierson developed septic shock as a result of the raging and untreated infection.

40. To treat the septic shock, Mr. Pierson underwent extensive vasopressor therapy. He developed purpura fulminans, a complication that rapidly leads to tissue necrosis and disseminated intravascular coagulation ("DIC"), a condition that compromises tissue blood flow.

41. The sepsis, prolonged course of vasopressor therapy, and purpura fulminans all led to tissue necrosis and the ultimate development of dry gangrene of both feet, necessitating the amputations of Mr. Pierson's legs below the knee.

42. Had Mr. Pierson been treated properly by the medical staff at the Philadelphia VAMC when he presented on May 5 or May 6, 2016, before he developed septic shock, he would have avoided the subsequent complications, the most significant of which was the need to amputate both of his legs below the knee.

43. Mr. Pierson's injuries are a direct result of the negligent care provided by his healthcare providers at the Philadelphia VAMC.

### Negligence

44. Plaintiff restates and re-alleges paragraphs 1 through 43 as if fully stated herein.

45. As a provider of medical services to Mr. Pierson, the United States and its agents, servants, or employees at the Philadelphia VAMC and its affiliates, including but not limited to Drs. Van Arsdalen, Skokan, DiNicola, and Nurse

Harkins, owed Mr. Pierson a duty to provide him medical care consistent with the governing standard of medical care.

46.  The agents, servants, or employees of the United States at the Philadelphia VAMC and its affiliates, including but not limited to Drs. Van Arsdalen, Skokan, DiNicola, and Nurse Harkins, while acting within the scope of their employment, violated the applicable standards of medical care in the following respects:

    a.    the failure to adequately monitor and treat Mr. Pierson's kidney and ureteral stones;

    b.    the failure to timely diagnose and treat Mr. Pierson's urinary tract infections;

    c.    the failure to provide appropriate intravenous antibiotics;

    d.    the failure to provide and ensure Mr. Pierson received oral antibiotics;

    e.    the failure to order and perform appropriate imaging studies and testing to investigate the potential for an obstruction;

    f.    the failure to appreciate that Mr. Pierson was experiencing a medical emergency upon his presentation to the Philadelphia VAMC and provide necessary emergent medical care; and

  g. other deviations from the standard of care which will be developed through further investigation, discovery and expert review.

 47. Had Philadelphia VAMC personnel appropriately treated Mr. Pierson, his resultant bilateral leg amputations and other complications would have been prevented.

 48. As a direct and proximate result of the negligence of Defendant, Plaintiff claims the following damages:

  a. Compensation for pain, suffering, disfigurement, disability, mental anguish, emotional distress, and loss of life's pleasures;

  b. Compensation for all economic damages, including medical bills and expenses, incidental expenses, loss of earnings, and loss of earning capacity; and

  c. Compensation for any other damages sustained by Plaintiff as a proximate result of the negligence of Defendant's employees and/or agents.

 WHEREFORE, Plaintiff requests that the Court grant judgment in his favor against the Defendant in the amount of Twenty Million Dollars ($20,000,000.00), together with any other costs as he may be lawfully entitled to recover.

 Dated this ___ day of June, 2017.

           Respectfully submitted,

          DOUGLAS PIERSON

By: _____
Richard L. Frankel
Bross & Frankel, P.A.
102 Browning Lane, Bldg. C-1
Cherry Hill, NJ 08003
(856) 795-8880
(856) 795-1242 – Facsimile
rich@brossfrankel.com
Counsel for Plaintiff